Donald Lee SCHNOOR, Plaintiff-Appellee,

v.

C. E. LINKIEWICZ, Carl W. Larson, First State Bank of Calumet City and Wally Troyan, Defendants-Appellants.

No. 16400.

United States Court of Appeals Seventh Circuit.

June 11, 1968.

Roman E. Posanski, William Kirby, Posanski, Johannsen, Krohn & Jacobs, Chicago, Ill., for defendants-appellants.

James C. Kellogg, Chicago, Ill., for plaintiff-appellee.

Before MAJOR, Senior Circuit Judge, and HASTINGS and CUMMINGS, Circuit Judges.

MAJOR, Senior Circuit Judge.

This diversity action was commenced by a complaint charging defendants named in the caption with false imprisonment and malicious prosecution. All defendants were dismissed prior to trial, except C. E. Linkiewicz. The case as to him was tried to a jury which returned a verdict in favor of plaintiff in the sum of $5,000. The appeal is here from a judgment entered thereon.

Defendant Linkiewicz, Chief of Police of Calumet City, Illinois, caused to be issued by Paul F. Gerrity, a Police Magistrate, a warrant charging plaintiff with the crime of forgery. Upon the warrant thus issued, plaintiff was arrested.

The factual situation, with some supplementation, is taken from defendant's brief. An official of the Calumet City State Bank reported a forgery to the Police Department of Calumet City. The forged instrument was a check drawn on the account of Carl W. Larson. Upon receiving the report, defendant interviewed Larson and learned that plaintiff, Donald Lee Schnoor, had access to the checkbook of Larson while he was employed to lay tile in his tavern, and that one blank check had been taken from this checkbook. Other persons also had access to the checkbook. The officer learned that plaintiff lived in Hammond, Indiana, just across the state line from Calumet City. The forged instrument bore the endorsement of Wally Troyan, a television dealer in Calumet City. Defendant interviewed Troyan and learned that the check was received as payment for a television set. He also learned from the Hammond Police Department that Schnoor had a criminal record, and was given his photograph. Defendant showed the photograph to Larson who stated that "he looked familiar."

Defendant presented the documentary evidence—the forged check, two receipts in the handwriting of Schnoor which evidenced payments he had received from Larson for the tile work, the criminal record and the photograph which he had obtained from the Hammond Police Department—to the Police Magistrate, a licensed practicing attorney. Upon such evidence, together with representations made by defendant, the Magistrate issued a warrant charging forgery, pursuant to which defendant arrested plaintiff on September 6, 1963, and he was released on bond the following day. At the preliminary hearing on October 28, 1963, before the same Magistrate, the State moved for an order of nolle prosequi, and plaintiff was discharged.

Defendant on brief states the contested issues thus:

"1. Did plaintiff sustain his burden of proving absence of probable cause and that defendant, C. E. Linkiewicz had been actuated by malice at the time he started the prosecution; and

"2. Did plaintiff establish that the actual amount in controversy amounted to the jurisdictional requirement, to-wit: $10,000.00."

We think the first issue more accurately stated is whether the trial court erred in holding as a matter of law that there was no proof of a lack of probable cause and refusing to direct a verdict for defendant, or for the same reason erred in denying defendant's motion for a judgment n.o.v. or, in the alternative, for a new trial. In this connection it is pertinent to note that no

complaint is made here that the jury was improperly instructed or that any evidence was improperly admitted or excluded. While defendant makes a rather appealing argument that he was acting in good faith in discharge of his duties as a police officer, we conclude that the issue of a lack of probable cause was properly submitted to the jury and that its verdict bears substantial support.

■ We must keep in mind that this court must accept as true facts which plaintiff's evidence tend to prove and draw against defendant on his motion for a directed verdict all reasonable inferences favorable to plaintiff. Brandt v. Pennsylvania Ry. Co., (C.A.-7) 231 F.2d 848, 851, 57 A.L.R.2d 1078 and Stueber et al. v. Admiral Corp. (C.A.-7), 171 F.2d 777, 779.

The jury could properly consider that plaintiff had worked steadily at the same job for some six years and that his criminal record, made many years before, was of minimal consequence. It also could have believed, from the testimony of Larson, that some person other than plaintiff took the blank check from Larson's book.

More important is the evidence relative to the so-called identification by Troyan of plaintiff from a photograph shown him by defendant, as the man who gave him the forged check in payment for a television set. Troyan did not even come close to identifying plaintiff. At the trial where plaintiff was discharged, Troyan testified that he told defendant that the person shown in the photograph "looked familiar," and that plaintiff "looked like somebody he may have seen around town." Defendant in procuring the warrant for plaintiff's arrest represented to the Police Magistrate that Troyan identified plaintiff as the person who passed the forged check. Thus, the jury could have believed that the warrant issued on a false representation by defendant.

Another circumstance which the jury could have taken into consideration was that defendant obtained from Larson at the time of his first interview with him plaintiff's signature on receipts which he had given Larson. Instead of having a handwriting expert compare plaintiff's signature with that on the forged check before obtaining a warrant, he deferred doing that until after the warrant had issued, when it was ascertained that the signature on the forged instrument was not that of plaintiff. This appears to have been the main reason the criminal prosecution was so abruptly disposed of in plaintiff's favor.

Rather than citing and analyzing numerous Illinois cases called to our attention, we refer to two previous decisions of this court, both for malicious prosecution and based upon Illinois cases. In Stueber et al. v. Admiral Corporation, 171 F.2d 777, 779, we stated:

"* * * if defendant had 'reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the accused was guilty of the offense charged,' probable cause existed. Knickerbocker Ice Co. v. Scott, 76 Ill.App. 645 at page 647; Harpham v. Whitney, 77 Ill. 32 at page 39; Jacks v. Stimpson, 13 Ill. 701, 702."

While this case was reversed because of the admission of prejudicial evidence, we held on a record which appears more favorable to the defendant than that here that a jury question was presented on the issue of probable cause.

In Stueber (171 F.2d page 780), we quoted from our holding in Sheffield v. Cantwell et al., (C.A.-7), 101 F.2d 351, 352, as follows:

"'The existence of malice does not tend to prove a want of probable cause, for although malice may be inferred from lack of probable cause, the absence of probable cause cannot be inferred from malice. McElroy v. Catholic Press Co., 254 Ill. 290, 294, 98 N.E. 527; Brown v. Smith, 83 Ill. 291.'"

Later Illinois cases are to the same effect. See Vasquez v. Jacobs, 23 Ill. App.2d 457, 464, 163 N.E.2d 230 (1960), and Ferrell v. Livingston, 344 Ill.App. 488, 495, 101 N.E.2d 599 (1951).

 We think the rule thus announced disposes of defendant's argument that there was a total lack of any evidence "that defendant was actuated by malice at the time he obtained the warrant." The issue was whether there was a lack of probable cause, and the jury having decided this issue against defendant, malice was inferred.

 Defendant's contention that the court was without jurisdiction on the ground that there was an insufficient amount in controversy is without merit. Plaintiff in his complaint claimed damages in the amount of $25,000, and there is no reason to believe that the claim was not made in good faith. The court instructed the jury that in estimating the amount of plaintiff's damages, "you have the right to take into consideration and allow to him such reasonable sum as the evidence may show he was compelled to pay in defending himself against said charge, and such reasonable sum the evidence may show to be a just compensation for the time necessarily lost in attending upon said trial, and such further sum as will compensate him for injured reputation, peace of mind and mental suffering." No objection is raised as to the propriety of this instruction which is consistent with the allegations in plaintiff's complaint. The fact that the jury awarded only $5,000 as damages is no indication that a larger amount was not in controversy; in fact, under the court's instruction, the jury might well have awarded more than the jurisdictional amount.

The court in St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288, 58 S.Ct. 586, 590, 82 L.Ed. 845, made the following pertinent statement:

"The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction."

The judgment appealed from is

Affirmed.